UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>MALIK M. SCOTT-BOYTON ) | No. 3:22-CR-96<br>VARLAN/MCCOOK |

**DEFENDANT'S MOTION TO SUPPRESS AND MEMORANDUM IN SUPPORT**

Malik M. Scott-Boynton, by and through undersigned counsel, and pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C) and the Fourth Amendment to the United States Constitution, moves this Honorable Court to suppress the evidence that law enforcement seized from a warrantless search of 790 North Cedar Bluff Rd., Apartment 2905. The grounds for this motion are as follows:

I. **RELEVANT FACTS**

1. In June of 2022, the Knoxville Police Department (hereinafter referred to as "KPD") began receiving "numerous anonymous drug complaints of a black male from Detroit selling heroin in the West Knoxville area" and operating out of a Toyota Four-Runner with an out of state license plate. Defense Ex. 1, p. 5.

2. Between June and September of 2022, KPD officers allegedly observed controlled hand-to-hand transactions involving a confidential informant in various apartment complexes in west Knoxville. *Id.* at 5-13.

3. On September 12, 2022, Officer Strickenberger acquired a federal search warrant for 9112 Grayland Drive, Apartment 102 (hereinafter referred to as the "Grayland Drive apartment"). Defense Ex. 1. Officer Strickenberger alleged that members of a drug

1

trafficking organization were staying at and operating out of the Grayland Drive apartment. *Id.* at 12.

4. On September 14, 2022, ATF agents and KPD officers executed the search warrant at the Grayland Drive apartment. Defense Ex. 2, p. 15. Inside, the officers found Mr. Scott-Boynton's co-defendant, Brian Rogers, a "large sum of U.S. Currency," and a "small amount of marijuana." *Id.*

5. "Just prior to the execution of the search warrant," the agents and officers observed Mr. Scott-Boynton leave the Grayland Drive Apartment, get into a car, and drive away. *Id.*

6. Because the officers previously obtained a court's permission to use a tracking device on the vehicle that Mr. Scott-Boynton got into, officers observed Mr. Scott-Boynton drive to 790 North Cedar Bluff Rd., Apt. 2905 (hereinafter referred to as the "Cedar Bluff apartment"). *Id.* The Cedar Bluff apartment is roughly 5 minutes away from the Grayland Drive apartment via car.

7. A group of agents and officers drove to the Cedar Bluff Apartment. After surveilling the area for "[a]pproximately one hour," officers observed Mr. Scott-Boynton open the door of the Cedar Bluff apartment from the inside, close it behind him, and lock it with a key. *Id.*

8. As Mr. Scott-Boynton walked away from the door to the apartment and approached the vehicle, the officers arrested him. *Id.* Mr. Scott-Boynton was approximately 10 yards away from the door of the apartment when the officers arrested him.

9. After arresting Mr. Scott-Boynton, "[o]fficers performed a safety sweep" of the Cedar Bluff apartment. *Id.*

10. The officers did not possess a search warrant for the Cedar Bluff Apartment at the time of the "safety sweep."

11. During the "safety sweep," officers found a "kilogram press, multiple large baggies consistent with narcotics packaging, and two blenders with narcotics residue." *Id.*

12. Only after the "safety sweep" did Agent Strickenberger apply for and obtain a search warrant for the Cedar Bluff apartment. Defense Ex. 2.

13. In the affidavit for the search warrant, Agent Strickenberger includes a description of the evidence found during the "safety sweep." *Id.* at 15.

As a result of the foregoing, the United States has charged Mr. Scott-Boynton with conspiracy to possess with intent to distribute 1 kilogram or more of a mixture and substance containing a detectable amount of heroin and 400 grams or more of a mixture and substance containing a detectable amount of fentanyl. Docket entry 20.

## II. ARGUMENT

The United States Constitution protects all persons from "unreasonable searches." U.S. Const. Amend IV. A warrantless search of a home is presumably unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980). There are only a few "jealously and carefully drawn exceptions to the general warrant requirement for searches." *Jones v. United States*, 357 U.S. 493, 499 (1958). However, these exceptions are "few" and "well-delineated." *Katz v. United States*, 389 U.S. 347, 357 (1967). The Supreme Court has emphasized that "police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure." *Terry v. Ohio*, 392 U.S. 1, 20 (1968). The Sixth Circuit has likewise emphasized that "the warrant requirement is at the very heart of the Fourth Amendment" and that "judicial exceptions to it are only exceptions." *United States v. Haddix*, 239 F.3d 766, 768 (6th Cir. 2001).

3

The United States bears the burden of proving that a warrantless search was reasonable and did not violate the Fourth Amendment. *United States v. Washington*, 573 F.3d 279, 286 (1951).

**A. The Police Officers Conducted a Warrantless Search of the Cedar Bluff Apartment Under the Guise of a "Safety Sweep."**

A "protective sweep" is a "quick and limited search of [a] premises, incident to an arrest." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). The purpose of a protective sweep is not to discover incriminating evidence, but rather to "protect the safety of police officers or others." *Id.* For this, a protective sweep must be "narrowly confined to a cursory visual inspection of those places in which a person may be hiding" and does not amount to a "full search of the premises." *Id.* at 335. "The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and *in any event* no longer than that in which it takes to complete the arrest and depart the premises." *Id.* (emphasis added).

The *Buie* Court identified two levels of protective sweeps that are constitutionally permissible during an arrest. *Buie*, 494 U.S. at 334. First, when officers arrest a person inside a home, they may search "closets and other spaces immediately adjoining the place of arrest" for officer safety. *Id.* Second, a more pervasive search that extends past the immediately adjoining areas in the home is only lawful where there are "articulable facts which . . .would warrant reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* In assessing the danger that may be present inside the home, the defendant's own dangerousness is irrelevant because the defendant is already in custody. *United States v. Colbert*, 76 F.3d 773, 777 (6th Cir. 1996).

4

The Sixth Circuit has generally upheld the more pervasive protective sweep when officers apprehend a person *inside* a home where other individuals are present. *See United States v. Stover*, 474 F.3d 904, 911-12 (6th Cir. 2007) (emphasis added). In *Stover*, the arresting officers observed two vehicles parked in the defendant's driveway and heard movement inside the house as they entered. *Id.* at 910. After arresting the defendant on the ground floor of the house, the officers observed another individual coming down the stairs. *Id.* At this point, the officers cleared the rest of the house out of "concern that there was another adult in the house." *Id.* The Sixth Circuit decided that these specific and articulable facts were "sufficient to justify a protective sweep." *Id.* at 912.

    i.    <u>Protective sweeps are not an excuse to conduct a preliminary search for evidence before obtaining a search warrant.</u>

In contrast, however, protective sweeps are difficult to justify when officers apprehend the arrestee *outside* the home. *See, e.g.*, *United States v. Archibald*, 589 F.3d 289 (6th cir. 2009); *United States v. Colbert*, 76 F.3d 773 (6th Cir. 1996); and *United States v. Kinney*, 638 F.2d 941 (1981). To be constitutional, the Government must point to facts that warrant a reasonable belief that other persons are inside the home and pose a threat to the officers or others. *See, e.g.*, *United States v. Biggs*, 70 F.3d 913, 915 (6th Cir. 1995) (Protective sweep upheld where officers had information that another person would be meeting the defendant in the hotel room and that the defendant had previously been arrested in the presence of someone with a firearm.); *United States v. Atchley*, 474 F.3d 840, 849 (6th Cir. 2007) (Protective sweep upheld where two co-conspirators evaded arrest and may have entered the room that the defendant had just left open and where officers observed a firearm.); *Perkins v. United States*, 127 Fed.Appx. 830, 835 (6th Cir. 2005) (Officers knew that at least one other person was in the home and had not been

5

secured.); *United States v. Beasley*, 199 Fed.Appx. 418, 423 (6th Cir. 2006) (Protective sweep upheld where officers arrested the defendant with a firearm in a parking lot and saw another person looking out of the window into the parking lot from the room that the defendant had just exited.); and *United States v. Stover*, 474 F.3d 904, 910 (6th Cir. 2007) (police observed two cars parked in the driveway, one of which belonged to a "known criminal.").

In *United States v. Archibald*, 589 F.3d 289, 293 (6th Cir. 2009), the officers arrested the defendant on the front porch of the defendant's apartment after pulling him away from the door frame. During the arrest, the officers did not view anything inside the home that would have suggested that other persons were in the immediate vicinity of the porch or anywhere else in the home. *Id.* at 298. Despite this, the officers entered the apartment and performed a protective sweep. *Id.* Because "there was no indication from viewing the area immediately adjoining the place of arrest . . . that an attack could be immediately launched," the Sixth Circuit held that the protective sweep was unconstitutional. *Id.*

Moreover, mere uncertainty or lack of information as to whether others are present inside a house is insufficient to justify a protective sweep. *United States v. Colbert*, 76 F.3d 773, 778 (6th Cir. 1996). In *Colbert*, a woman came running out of a house "in a hostile rage" after the officers arrested the defendant outside the house. *Id.* at 775. The officers also observed a shotgun in plain view inside the home. *Id.* During the hearing, the officers testified that the sweep was necessary because the officers were unsure if others were inside the home. *Id.* at 777-78. In rejecting this argument, the Sixth Circuit explained that "allowing the police to justify a protective sweep on the ground that they had no information at all is directly contrary to the Supreme Court's explicit command in *Buie* that the police have an articulable basis on which to support their reasonable suspicion of danger from inside the home. *Id.* at 778. In other words,

6

"'[n]o information' cannot be an articulable basis for a sweep that requires information to justify it in the first place." *Id.* The Sixth Circuit further elaborated: "allowing the police to conduct protective sweeps whenever they do not know whether anyone else is inside the home creates an incentive for the police to stay ignorant as to whether or not anyone else is inside the house in order to conduct a protective sweep." *Id.*

Furthermore, in *United States v. Kinney*, 638 F.2d 941, 944-45 (6th Cir. 1981),[1] the Sixth Circuit held that the FBI's warrantless intrusion into the defendant's home after his arrest on the front porch was unconstitutional.[2] The Sixth Circuit reached this holding despite evidence that the agents heard noises coming from inside the home and saw movement at a window. *Id.* at 944. The Sixth Circuit reasoned that "no objective facts support a reasoned fear on the part of the FBI agents at the defendant's apartment." *Id.* at 944.

    ii.    <u>The officers did not have facts to justify a protective sweep of the Cedar Bluff apartment.</u>

The protective sweep of the Cedar Bluff apartment was unconstitutional because the officers lacked specific and articulable facts to credit a reasonable belief that other individuals were present and dangerous inside the apartment. Like the defendants in *Archibald*, *Colbert*, and *Kinney*, the officers arrested Mr. Scott-Boynton outside of the apartment where they conducted the protective sweep. However, in contrast, Mr. Scott-Boynton was not on the front porch of the apartment when the officers arrested him. He was *further* from the door than the defendants in *Archibald*, *Colbert*, and *Kinney*. Further still, unlike those defendants, Mr. Scott-Boynton closed

---

[1] *Kinney* predates *Buie*.
[2] In due candor to the Court, however, the Sixth Circuit upheld the validity of the execution of subsequent search warrant because "substantial evidence which was not tainted by the search supported the search warrant." *Id.* at 954. This particular result in *Kinney* conflicts with the Sixth Circuit's holdings in *Haddix*, *Quinney*, and *Griffin*, which undersigned counsel later cites in this motion.

7

and locked the door behind him moments before the officers arrested him, cutting of his and anyone else's access to the inside of the apartment. If the protective sweeps in *Archibald*, *Colbert*, and *Kinney* did not pass muster, the sweep of the Cedar Bluff apartment should likewise fail.

Moreover, the officers that searched the Cedar Bluff apartment has *less* articulable facts than the officers in *Archibald*, *Colbert*, and *Kinney*. Before arresting Mr. Scott-Boynton, the officers surveilled the apartment for an hour. Defense Ex. 2. During that time, the officers did not observe any other persons enter or exit the apartment. When Mr. Boynton walked out of the apartment, he was alone. Furthermore, he closed and locked the door of the apartment behind him. The officers did not observe anyone peering out of the windows, nor did they report hearing movement inside when they arrested Mr. Scott-Boynton. The officers did not observe anything that would have suggested that another individual was inside the apartment. Unlike the officers in *Biggs*, the officers did not have information that another person planned to meet Mr. Scott-Boynton at the Cedar Bluff apartment. Unlike *Beasley*, the officers did not observe another person looking out a window into the parking lot. Unlike *Atchley*, the officers did not observe any firearms in the apartment in plain view, nor had another suspect arrived in the vicinity. Unlike *Stover*, the officers did not observe any other vehicles outside the apartment that they believed belonged to a known criminal. At best, these officers may have been uncertain as to whether others were present, but uncertainty is insufficient to justify a protective sweep. *Colbert*, 76 F.3d at 778.

Because the officers lacked specific and articulable facts to warrant a protective sweep, the Court should hold that the sweep violated Mr. Scott-Boynton's Fourth Amendment right to be free from unreasonable searches.

B. **The Inevitable Discovery Exception to the Exclusionary Rule Does Not Apply Because the Officers Did Not Possess the Lawful Means of Obtaining the Evidence at the Time of the Unconstitutional Search.**

When the police obtain evidence through a violation of the Fourth Amendment, the trial court must exclude that evidence at the defendant's trial. *Byars v. United States*, 273 U.S. 28, 29-30 (1927).

Evidence is admissible despite a Fourth Amendment violation only if law enforcement would have discovered the evidence "wholly independent of any constitutional violation." *Nix v. Williams*, 467 U.S. 431, 443 (1984). "[T]he inevitable discovery exception applies when, at the time of the unlawful search, there was a separate independent line of investigation underway or there are compelling facts indicating that the disputed evidence would have inevitably been discovered. *United States v. Kennedy*, 61 F.3d 494, 498 (6th Cir. 1995). The government must show by a preponderance of the evidence that an "independent, untainted investigation . . . inevitably would have uncovered the same evidence as that discovered through the illegal search." *United States v. Haddix*, 239 F.3d 766, 769 (6th Cir. 2001).

The Sixth Circuit has acknowledged that "[t]he inevitable discovery doctrine is conceptually more problematic . . . because it involves a degree of deducing was would have happened rather than simply evaluating what actually happened." *United States v. Leake*, 95 F.3d 409, 412 (6th Cir. 1996). Because of this, courts must keep speculation "to a minimum" and "focus on demonstrated historical facts capable of ready verification or impeachment." *Id.* Courts must "look at the facts at the time they existed at the instant before the unlawful search, and

9

determine what would have happened had the unlawful search not occurred." *Kennedy*, 61 F.3d at 498 (6th Cir. 1995) (citing *United States v. Eng*, 971 F.2d 854, 861 (2d. Cir. 1992)).

The inevitable discovery doctrine may apply if police officers possess a warrant at the time of the constitutional violation. *See United States v. Alexander*, 540 F.3d 494, 503 (2008). In *Alexander*, the officers arrested the defendant inside his home while executing a search warrant. *Id.* at 498. After handcuffing the defendant and placing him on the floor, the officers instructed the defendant to "admit where the cocaine was." *Id.* The officer did not give the defendant any *Miranda* warnings beforehand, and the defendant gave a statement that led officers to the location of more contraband in the home. *Id.* The Sixth Circuit held that the inevitable discovery exception applied because the officer possessed a search warrant for the home at the time of the *Miranda* violation and would have located the contraband once the search inevitably continued. *Id.* at 504.

However, if law enforcement does not possess a search warrant at the time of an unlawful search of a home, the inevitable discovery doctrine does not apply—even if law enforcement had probable cause to obtain a warrant. *United States v. Haddix*, 239 F.3d 766, 768 (6th Cir. 2001). In *Haddix*, the officers arrived at the defendant's home after a police helicopter observed marijuana growing behind the house. *Id.* at 766. While approaching the house, the officer saw marijuana plants and power lines running to other buildings on the premises. *Id.* From the defendant's porch, the officers observed an assault rifle inside the house. *Id.* at 767. Without a warrant, the officers entered the home and seized the firearm. *Id.* The officers searched further in the home, finding two more guns, marijuana, and the defendant. *Id.* The officers later obtained a search warrant, but "well after they invaded [the defendant's] home." *Id.* at 767. In *Haddix*, the government argued that the inevitable discovery doctrine applied because probable cause existed

10

for a search warrant anyway. *Id.* at 768. Despite agreeing that probable cause existed for a warrant, the Sixth Circuit refused to apply the inevitable discovery doctrine because the government's position, if correct, would "completely obviate the warrant requirement" and "radically depart[] from the Fourth Amendment warrant requirement precedent." *Id.* (quoting *United States v. Johnson*, 22 F.3d 674, 683-84 (6th Cir.1994)).

Likewise, the Sixth Circuit reached the same conclusion in *United States v. Quinney*, 583 F.3d 891 (6th Cir. 2009). In *Quinney*, the officers entered the defendant's home without a warrant or consent and seized evidence. *Id.* at 893. Prior to entering the home, the officers spoke with witnesses and likely developed probable cause to obtain a search warrant, but did not do so. *Id.* The government in *Quinney* argued that the evitable discovery doctrine applied because the officers had probable cause to obtain a search warrant at the time of the unlawful search and seizure. *Id.* at 894. The Sixth Circuit noted that it had "emphatically reject[ed]" the government's argument in numerous cases, and again "reject[ed] the government's attempt to circumvent the [warrant] requirement via the inevitable-discovery doctrine." *Id.* at 894-95.

Inevitable discovery does not apply even if the officers unlawfully search a home while they are *simultaneously* in the process of acquiring a search warrant. *United States v. Griffin*, 502 F.2d 959 (6th Cir. 1974). In *Griffin*, the officers developed probable cause for a search of the defendant's apartment and sent an officer to obtain a search warrant. *Id.* at 960. At the same time, the other officers went directly to the defendant's apartment, "forcibly enter[ed] it," and discovered narcotics. *Id.* The officers finally obtained the search warrant four hours later, whereinafter they searched the home again. *Id.* Like *Haddix* and *Quinney*, the government argued that the inevitable discovery doctrine applied because the officers had probable cause and were in the process of obtaining a search warrant. *Id.* Again, the Sixth Circuit rejected this

11

argument, holding that "police who believe they have probable cause to search cannot enter a home without a warrant merely because they plan subsequently to get one." *Id.* at 961.

Another circuit, the Eleventh, has reached the same conclusion when the alternative means of discovery is a search warrant. *See United States v. Satterfield*, 743 F.2d 827, 846 (11th Cir. 1984). In *Satterfield*, the police officers spoke with a witness who claimed to have witnessed a murder and pointed the officers to the defendant's home where the crime occurred. *Id.* at 843. Before obtaining a warrant, the officers walked to the defendant's home, entered, found and arrested the defendant, and seized incriminating evidence. *Id.* The Eleventh Circuit held that the inevitable discovery exception did not apply, explaining that "[t]he Government cannot later initiate a lawful avenue of obtaining the evidence and then claim that it should be admitted because its discovery was inevitable. *Id.* at 846. The Eleventh Circuit further stated that "[b]ecause a valid search warrant nearly always can be obtained after the search has occurred, a contrary holding would practically destroy the requirement that a warrant for the search of a home be obtained before the search takes place. *Id.*

Here, the actions of the officers are analogous to *Haddix*, *Quinney*, *Griffin*, and *Satterfield*, and distinguishable from *Alexander*. While it is possible that the officers had probable cause to obtain a search warrant for the Cedar Bluff apartment, they did not do so until after the unlawful protective sweep. The officers were also not in the process of obtaining a search warrant at the time of the constitutional violation. Like *Haddix* and *Griffin*, the officers did not acquire a search warrant until later. Even if the officers developed probable cause by the time the elected to do a protective sweep, the existence of probable cause does not summon the inevitable discovery doctrine. The officers needed to already possess the lawful means of discovery at the time of the violation, and they did not. For this, the inevitable discovery doctrine

12

does not apply, and the Court should exclude the evidence seized from the Cedar Bluff apartment from Mr. Scott-Boynton's trial.

### III. CONCLUSION

Wherefore, Mr. Malik M. Scott-Boynton respectfully moves this Honorable Court to issue an order suppressing the evidence that law enforcement found in the Cedar Bluff apartment resulting from an unconstitutional search.

RESPECTFULLY SUBMITTED:

FEDERAL DEFENDER SERVICES OF
EASTERN TENNESSEE, INC.

BY: s/ *Christopher Meadows*
Christopher Meadows
District of Columbia Bar No. 1779087
Federal Defender Services
800 South Gay Street
Suite 2400
Knoxville, TN 37929
(865) 637-7979