# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>RESIDENTIAL PROPERTY LOCATED AT, 790 NORTH<br>CEDAR BLUFF ROAD, APT 2905, KNOXVILLE, TN<br>37915 AS FURTHER DESCRIBED IN ATTACHMENT A, | )<br>)<br>)   Case No.   3:22-MJ- 1187<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the          **Eastern**          District of          **Tennessee**          *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before          September 26, 2022          *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to          Hon. Debra C. Poplin          .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for  30  days *(not to exceed 30)*      ☐ until, the facts justifying, the later specific date of          .

Date and time issued:          09/14/2022 1:30 pm

Judge's signature

City and state:          Knoxville, Tennessee

Debra C. Poplin, United States Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

RESIDENTIAL PROPERTY LOCATED AT, 790 NORTH CEDAR BLUFF ROAD, APT 2905 KNOXVILLE, TN 37923 AS FURTHER DESCRIBED IN ATTACHMENT A, WHICH IS ATTACHED HERETO AND FULLY INCORPORATED HEREIN.

)
)
)
)
)
)

Case No. 3:22-MJ- 1187

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Eastern _____ District of _____ Tennessee _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1) | Conspiracy to Distribute and Possess with intent to distribute heroin |
| 18 U.S.C. §924 (c) | Possession of a firearm in furtherance of a drug trafficking crime |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO Todd Strickenbergr, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 09/14/2022 _____

_____
*Judge's signature*

City and state: Knoxville, Tennessee

Debra C. Poplin, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

### Introduction

I, Todd Strickenberger, a Task Force Officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and being duly sworn, depose and state as follows:

### Agent Background

1.      I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). As such I am "an investigator or officer charged by the Attorney General with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of the laws of the United States" within the meaning of Section 3051(a) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, execute warrants and to make arrests for offenses against the United States and offenses enumerated in United States Code Title 18 and Title 21.

2.      I have been employed as a police officer with the City of Knoxville, Tennessee, since May 2002. I have been involved in the field of law enforcement for over seventeen years as a patrol officer and as an investigator and am currently assigned to the Organized Crime Unit, a unit that is charged with the investigation of criminal conduct in violation of the Tennessee laws concerning controlled substances, weapon violations, gang crimes, money laundering, prostitution, and other general violations of state and federal laws. Additionally, I am assigned to the ATF as a TFO. In the performance of my duties both as a uniformed law enforcement officer, an investigator, and task force officer, I have conducted and participated in numerous investigations involving controlled substances and other general investigations of state and federal laws. I have been involved in the detection and investigations of state and federal drug and weapons violations, including the sale, distribution, importation, possession and conspiracy to possess or sell and distribute various narcotics and controlled substances and the illegal possession and trafficking firearms. I have received specialized training in drug enforcement and criminal investigations from the Knoxville Police Department Training Academy and Law Enforcement Training Associates, Inc. Furthermore, I have received specialized training in areas of case development, investigator's techniques, and other standardized methods of investigating criminal activity. Due to my prior experience and previous cases in which I have been involved, and by working with other municipal, state, and federal agents, I have become familiar with the methods,

1

operations, and schemes commonly employed by individuals involved in the violations of drug and weapons statutes.

3.    As a result of my employment, training and experience as a state law enforcement officer and an ATF TFO, I have received training in connection with, and conducted investigations of violations of the National Firearms Act, Gun Control Act, and Title 18, United States Code, Sections 922(g), 924(c) and others. I have also received training and conducted investigations involving illicit drugs and the distribution of illicit drugs in violation of Title 21, United States Code, Sections 841, 843, 846 and others.

4.    In my experience, in investigations both state and federal drug trafficking and gun offenses, I have become familiar with codes, slang terms, and other terminology used to refer to controlled substances by narcotics traffickers within the Eastern District of Tennessee and elsewhere. Based on my training, experience, and collaboration with other law enforcement agents, and my participation in other investigations involving quantities of controlled substances, including heroin, fentanyl, fentanyl analogs, prescription opioids and other controlled substances, I know that drug traffickers commonly use residences and other dwellings to facilitate their illegal business, and typically store a portion, if not all of their narcotics and firearms at these locations. These firearms are used to protect the interests and proceeds resulting from sales of the narcotics. In addition, residences that drug traffickers use are not commonly rented or registered to themselves in an effort disguise their identity.

5.    The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated.

6.    I am investigating Raymond Miles Williams aka "Bobby", Brian Delano Rogers, Malik Marquise Scott-Boynton, and numerous other unknown individuals operating as a drug trafficking organization (DTO) who are suspected of conspiracy to possess with the intent to distribute Heroin, in violation of Title 21, United States Code, Sections 846 and 841; and possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).

7.    I am submitting this affidavit in support of an application for a warrant to search the following location: 790 North Cedar Bluff Road, Apartment 2905, Tennessee 37923, as more fully described in Attachment A (hereinafter "TARGET LOCATION").

2

8. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant authorizing the search of the TARGET LOCATION, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish probable cause to believe that TARGET LOCATION contains evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Section 841 and 846, and Title 18, United States Code, 924(c) as further described in Attachment B.

## Probable Cause

1. On May 24, 2021, Officers with the KPD's Organized Crime Unit (OCU), executed a state search warrant at 401 South Gallaher View Road, apt. 134, previously obtained by your affiant. This search warrant was built on the premise of numerous controlled narcotics purchases, utilizing confidential informants (CIs). The results of the search warrant yielded approximately 50 grams of suspected heroin, a loaded firearm, various drug manufacturing components, and a large amount of U.S. Currency. Three subjects were found inside the apartment at the time of the warrant service. One of these individuals was identified as Raymond Williams,. The subjects were all charged in Criminal Court of Knox County, TN for Sale/ Delivery of Schedule I, heroin. These cases are currently still pending in criminal court, and all three are out on bond. A copy of the lease of this location showed that Raymond WILLIAMS was not the actual lessee of apt. unit 134, but was rented to John Rubin of Atlanta, GA. Your affiant was unable to locate any corroborating evidence of a John Rubin of Atlanta and believes this information was fraudulent, and to date, law enforcement has been unable to locate any such subject.

2. On June 19, 2022 a CI notified your affiant that Raymond Williams was still dealing narcotics in Knoxville, even though Raymond Williams was on bond. The CI further stated that Williams told him/her that he has been dealing heroin for approximately a year. The CI stated that Williams was currently driving a white Toyota Four Runner with a Pennsylvania license plate. The CI advised the telephone number currently utilized by Williams to conduct drug purchases was 865-371-0926. (Background of CI: This CI has been a CI since 2020, originally working with the Tennessee Bureau of Investigation and subsequently Knoxville Police Department. The CI has proven to be reliable and credible. Law enforcement has utilized this CI over a dozen times in controlled purchases).

3

3. Starting in early June of 2022, the KPD's OCU received numerous anonymous drug complaints of a black male from Detroit selling heroin in the West Knoxville area. These complaints were specific enough to the point of describing the suspect vehicle to be a white Toyota Four Runner with PA license plate of LRP6368. The complaints included common drug distribution areas for the subjects to be The Willows Apartments, Deane Hill Apartments, Tiffany Square Apartments, The Vue at Ridgeway Apartments, and others. In early July 2022, the anonymous complainant updated KPD, stating the subjects no longer drive a white Toyota Four Runner, but are now currently driving a newer red Toyota Four Runner with a Utah license plate. At approximately the same time as the anonymous complaints came into KPD, the CI informed your affiant that Williams was out of town, but Williams' "brother" was running drugs for him while he was away. The CI advised the "brother" is now driving a red Toyota Four Runner with a different state license plate. The "brother" was described as a black male. It is your affiant's belief that the "brother" is part of Raymond Williams' Drug Trade Organization (DTO).

4. On July 6, 2022, investigators with the Knoxville Police Department conducted a prosecutable purchase of heroin from an unknown black male, utilizing a confidential Source hereafter referred as CS-1, at the address of 1201 Vista Ridge Way (The Vue at Ridgeway Apartments). CS-1 contacted the target by calling 865-371-0926. CS-1 was successful in the transaction, resulting in an exchange of $225 undercover government funds, for 1/8 ounce of suspected heroin. CS-1 stated to investigators that he/she didn't know the name of the individual who sold them the contraband, but is the same individual who they have previously observed selling heroin. This particular controlled purchase was conducted in the parking lot of said apartment complex. Surveillance units established a perimeter in the parking lot, and maintained constant visual contact with CS-1 and CS-1's vehicle during the interaction. Officers did observe CS-1 enter and exit the passenger seat of the red Toyota Four Runner with a Utah license plate U407JM, hereafter referred to as TARGET VEHICLE 1. Your affiant did determine that TARGET VEHICLE 1 is 2019 Toyota Four Runner, with a VIN: JTEMU5JRXM5900960. TARGET VEHICLE 1 is registered to PV Holdings Corporation, parent company to Budget/ Avis Car Rental. (Background of CS1: CS1 has worked with law enforcement for over two years and has conducted numerous controlled buys on behalf of law enforcement. CS1 has proven reliable and credible. CS1 is not pending any criminal charges and is motivated by financial compensation).

5. On July 8, 2022, after submitting the Utah license plate U407JM into a law enforcement data base, your affiant learned that the vehicle with the UT plate was recorded to be in the parking lot of 301 Cheshire Drive in the early hours of July 8, 2022.

6. On July 8, 2022, investigators with KPD OCU and agents with the Bureau of Alcohol, Tobacco, and Firearms (ATF) conducted surveillance of TARGET VEHICLE 1, as it was parked in the lot of Windover Apartments located at 301 Cheshire Drive. Officers and Agents observed a black male, appearing to be the same individual from the controlled purchase on July 6, 2022, enter TARGET VEHICLE 1 and leave the parking lot. Officers and agents were able to follow TARGET VEHICLE 1 from that location as it traveled directly to 611 Rockingham Drive. Special Agent (SA) Kilday with ATF did observe an unknown white female exit the residence and conduct a hand-to-hand transaction with the occupant of TARGET VEHICLE 1. Officers and agents then observed TARGET VEHICLE 1 enter The Willows Apartment Complex, but due to the possibility of being discovered from counter surveillance, they did not follow. However, your affiant knows, through surveillance from this investigation, that the Williams' DTO have been known to sell narcotics inside that specific apartment complex.

7. On July 9, 2022, your affiant applied for and received an order allowing the installation of a GPS tracking device on TARGET VEHICLE 1. The GPS tracking device was installed on July 10, 2022. The above mentioned tracker recorded travel data from TARGET VEHICLE 1 while installed from July 10, 2022 to July 31, 2022. Upon review of recorded information, your affiant learned that TARGET VEHICLE 1 repeatedly visited various apartment complex parking lots in the west Knoxville area throughout the day. These apartment complexes included The Willows, Dean Hill Apartments, The Vue at Ridgeway, Country Club Apartments and The Metropolitan. During each visit to the apartment complex parking lots, TARGET VEHICLE 1 only stayed for an average of a few minutes. Your affiant knows from training and experience that this activity is consistent with narcotics trafficking.

8. On July 15, 2022, at approximately 12:25AM, your affiant, while in a marked KPD unit and uniform, conducted a traffic stop on TARGET VEHICLE 1. The traffic stop was conducted in the parking lot of Family Dollar, located at 9123 Executive Park Drive. The purpose of the traffic stop was to identify the unknown male that conducted the sale of suspected heroin with the CI on July 6, 2022. The driver of TARGET VEHICLE 1 did produce a Michigan ID only with the name of Brian Delano ROGERS

5

(DOB █████████ Your affiant did determine that the person operating the vehicle was the same individual that sold the CI suspected heroin on July 6, 2022.

9. On July 17, 2022, your affiant, upon review of GPS tracker data, learned that TARGET VEHICLE 1 was in the "arrival lane" of Knoxville Tyson McGhee Airport on the evening of July 16, 2022. Your affiant also learned that TARGET VEHICLE 1 had returned to the airport at approximately 12:30pm on July 17, 2022. Your affiant conducted surveillance of TARGET VEHICLE 1 as it exited the airport parking lot. Your affiant did observe Brian ROGERS operating TARGET VEHICLE 1, and Raymond WILLIAMS as a passenger. Surveillance was terminated after your affiant observed TARGET VEHICLE 1 return to 301 Cheshire Drive, and both subjects exit the vehicle, and walk toward apartment unit 139.

10. On July 27, 2022, investigators with the Knoxville Police Department and ATF Agents conducted a controlled purchase of heroin from Brian ROGERS utilizing CS-1, at the address of 1201 Vista Ridge Way (The Vue at Ridgeway Apartments). CS-1 contacted the target by calling 865-371-0926. CS-1 was successful in the transaction, resulting in an exchange of $225 undercover government funds, for 1/8 ounce of suspected heroin. CS-1 stated that this purchase was from the same individual CS-1 had purchased heroin from on July 6, 2022 who law enforcement now knows to be Brian ROGERS. At that time, Brian ROGERS was still driving TARGET VEHICLE 1.

11. On July 31, 2022, CS-1 texted your affiant the following message: "Rc2 something…silver camera. He changed cars and had someone new with him". CS-1 was notifying your affiant that ROGERS traded in TARGET VEHICLE 1 for a Silver Toyota Camry rental car. Upon receiving this information, KPD Investigator Jinks drove to the Avis / Budget rental car company at 8014 Kingston Pike and located TARGET VEHICLE 1 parked in the lot. Investigator Jinks removed the GPS tracking device from TARGET VEHICLE 1.

12. On August 1, 2022, ATF Special Agent Kilday observed ROGERS pull into the parking lot of Windover Apartments located at 301 Cheshire Drive, Knoxville, TN 37919 driving a Silver Toyota Camry bearing Missouri tag RC2N9P (hereafter referred to as TARGET VEHICLE 2). Agents and Officers know this particular DTO changes rental cars approximately every month to thwart law enforcement efforts. SA Kilday discovered TARGET VEHICLE 2 is a 2021 Toyota Camry bearing

6

Missouri tag RC2N9P with VIN # 4T1G11AK6MU541999 and is registered to EAN Holdings, the parent company of Enterprise Rentals

13. On August 3, 2022 Investigator Jinks with KPD OCU contacted Enterprise Rentals and learned that TARGET VEHICLE 2 was currently rented by Raymond Williams and is due to be returned on August 27, 2022. Through the investigation, law enforcement has learned that this DTO commonly rents all of their vehicles, and generally will trade them out so to elude law enforcement detection.

14. On August 3, 2022, KPD Investigator Jinks applied for and received an order allowing the installation of a GPS tracking device on TARGET VEHICLE 2. The GPS tracking device was installed on August 4, 2022.

15. On August 8, 2022 investigators learned that TARGET VEHICLE 2 was traffic stopped by Ohio State Police, as it was traveling south on Interstate 75, in the area of Findlay, OH. In a Ohio State Highway Patrol Incident report (221310560132), TARGET VEHICLE 2 was stopped for a moving traffic violation, by Trooper Matthew Cook. Trooper Cook reported that the vehicle was occupied by two subjects, Gerald Bernard Jackson and Dimitria Monique Harris. After developing probable cause, Trooper Cook conducted a search of TARGET VEHICLE 2. The search resulted in approximately 888 grams of suspected fentanyl. While interviewing the two suspects, Trooper Cook learned that Harris is Raymond Williams' niece. Harris also advised during the interview that she and Jackson were en route to Tennessee for a vacation. However, the couple had no luggage nor did they have any reservations or specific locations to visit.

16. On August 9, 2022, SA Tyler Kilday with ATF contacted your affiant via text to advise of a possible new vehicle being utilized by the Williams DTO. SA Kilday sent your affiant a photo of a red Kia Sportage with a FL license plate, GHLQ85. The photo was taken in the parking lot of 301 Cheshire Drive, the apartments known to be the domicile for multiple subjects involved in the Williams DTO. The above mentioned vehicle (hereinafter referred to as TARGET VEHICLE 4) was discovered to be a 2021 Kia Sportage with VIN: KNDPM3AC8M7933784, and is registered to PV Holdings, parent company to Budget/ Avis Rental.

7

* *Investigators Note*: *Due to fact VEHICLE 2 was impounded on August 8, 2022 by Ohio State Police, law enforcement began looking into a new rental vehicle that would be utilized by the Williams DTO in the Knoxville area, and likely operating from the address of 301 Cheshire Drive, Windover Apartments.*

17. On August 10, 2022, CS-1 contacted your affiant to advise that there was a new vehicle being utilized by the Raymond Williams DTO. The text message read as follows:

CS-1: They're in a red Kia with FL tags, 085 were the last digits

The information provided by CS-1 corroborates the intel brought by ATF agent Kilday.

18. On August 17, 2022, CS-1 contacted your affiant to advise that there was *another* vehicle being utilized by the Raymond Williams DTO. The text message read as follows:

CS-1: I was just told that the brother wasn't delivering today it was the other skinny guy with dreads in a red Jeep.

* *Investigators Note*: CS-1 is referring to Brian Delano Rogers when he/she referred to the "brother".

Later, ATF SA Makemson then contacted your affiant advising that there was a burgundy Jeep Cherokee with Florida license plate 51BSKF in the parking lot of 301 Cheshire Drive. This address is known to law enforcement to be the base of operations/ residence for the Raymond Williams DTO. Upon entering the above license plate into NCIC, your affiant learned that the mentioned vehicle was a 2019 Jeep Cherokee, VIN 1C4RJFBG3KC666336, and registered to PV Holdings, hereafter referred to a TARGET VEHICLE 3.

19. On August 18, 2022, investigators with the Knoxville Police Department conducted a controlled purchase of heroin from an unknown black male, utilizing CS-1, at the address of 6315 Kingston Pike (Kingston Point Apartments). CS-1 utilized the same "drug phone number, 865-371-0926" to contact the target as he/she has used in the previous purchases on July 6, 2022 and July 27, 2022. CS-1 was successful in the transaction, resulting in an exchange of $225 undercover government funds, for 1/8 ounce of suspected heroin. CS-1 stated to investigators that he/she didn't know the name of the individual who sold them the contraband, but is the same individual who they have previously observed selling heroin. CS-1 further described the subject that conducted the transaction as a skinny black male with long dreads. This particular controlled purchase was conducted in the parking lot of said apartment complex. Surveillance units established a perimeter in the parking lot, and maintained constant visual contact with CS-1 and CS-1's vehicle during the interaction. Officers did observe CS-1 enter and exit

8

the passenger seat of TARGET VEHICLE 3. Soon after the conclusion of the controlled buy, ATF SA Makemson observed TARGET VEHICLE 3 return to the address of 301 Cheshire Drive. A black male with long dreads did exit TARGET VEHICLE 3, and walked toward building 9's breezeway. This breezeway is known to law enforcement to be one of the routes to the DTO's apartment unit.

20. On August 19, 2022, CS-1 contacted your affiant to advise more information about VEHICLE 4, the other vehicle being utilized by the Raymond Williams DTO. The text message read as follows:

CS-1: The brother is driving is driving the red Kia...he has his own operation.

He goes by Dread

He has his own separate dope. He just basically told me how everything works

He has his own phone number too

The brother is with his skinny partner with long dreads

At the Weigel's across from cookout on Kingston Pike right now LOL

* *Investigators Note*: CS-1 is referring to Brian Delano Rogers when he/she referred to the "brother".

21. On August 19, 2022, your affiant applied for and received an order allowing the installation of a GPS tracking device to on TARGET VEHICLE 3. The GPS tracking device was installed on August 23, 2022. The above-mentioned tracker recorded travel data from TARGET VEHICLE 3 while installed from August 23, 2022 to present. Upon review of recorded information, your affiant learned that TARGET VEHICLE 3 repeatedly visited various apartment complex parking lots in the west Knoxville area throughout the day. These apartment complexes included The Willows, Dean Hill Apartments, The Vue at Ridgeway, Country Club Apartments, The Palisades, Cedar Springs Apartments, and The Metropolitan. During each visit to the apartment complex parking lots, TARGET VEHICLE 3 only stayed for an average of a few minutes. Your affiant knows from training and experience that this activity is consistent with narcotics trafficking.

22. On August 24, 2022, your affiant, while in a marked KPD unit and uniform, conducted a traffic stop on TARGET VEHICLE 3. The traffic stop was conducted in the parking lot of Cedar Springs Apartments, located at 364 Cedar View Way. The purpose of the traffic stop was to identify the unknown male(s) that were utilizing TARGET VEHICLE 3 in order to conduct the sale of suspected heroin in the Knoxville area, including the sale made with CS-1 on August 18, 2022. The driver of TARGET VEHICLE 3 did produce a Michigan ID only with the name of Malik Marquise SCOTT-BOYNTON

9

(DOB          ). It was determined that SCOTT-BOYNTON was not the individual who sold CS-1 suspected heroin on August 18, 2022, but has been observed operating TARGET VEHICLE 3 numerous times during surveillance.

23. On August 26, 2022, your affiant observed two separate hand-to-hand transactions between the operator of TARGET VEHICLE 4 and two unknown individuals in the parking lot of Country Club Apartments, located at 8400 Country Club Way. Your affiant knows from investigating this DTO, the suspects commonly sell heroin to their customers at this location. Approximately 10 minutes following the transactions, ATF SA Makemson observed TARGET VEHICLE 4 return to 301 Cheshire Drive, Windover Apartments. SA Makemson also observed a skinny black male with long dreads exit TARGET VEHICLE 4, and walk toward building 9's breezeway, the known building to where the Williams' DTO is residing.

24. On August 29, 2022, your affiant applied for and received an order allowing the installation of a GPS tracking device to on TARGET VEHICLE 4. The GPS tracking device was installed on August 30, 2022. The above-mentioned tracker recorded travel data from TARGET VEHICLE 4 while installed from August 30, 2022 to present. Upon review of recorded information, your affiant learned that TARGET VEHICLE 4 repeatedly visited various apartment complex parking lots in the west Knoxville area throughout the day. These apartment complexes included The Willows, Dean Hill Apartments, The Vue at Ridgeway, Country Club Apartments, and The Metropolitan. During each visit to the apartment complex parking lots, TARGET VEHICLE 4 only stayed for an average of a few minutes. Your affiant knows from training and experience that this activity is consistent with narcotics trafficking. TARGET VEHICLE 4 is currently in Detroit, MI.

25. On September 2, 2022, your affiant noted that TARGET VEHICLE 3 had not returned to 301 Cheshire Drive in over a day's time. Throughout the investigation, your affiant knows this to be an uncommon factor in the DTO's habit, as almost every evening one of the rental vehicles utilized by the DTO stayed at that address for the night. Furthermore, upon review of GPS tracker data, your affiant learned that TARGET VEHICLE 3 was now staying at the address of 9112 Grayland Drive, Brendon Park Apartments every evening since September 2, 2022, and hasn't returned to 301 Cheshire Drive.

10

26. On September 4, 2022, your affiant conducted a stationary surveillance operation on TARGET VEHICLE 3, as it was parked in front of the breezeway at 9112 Grayland Drive. During the surveillance, your affiant observed a black male, later identified as Brian ROGERS, exit the breezeway and enter into a silver Ford SUV with IL license plates of FP133324 (here after referred to as TARGET VEHICLE 5. The mentioned vehicle was parked directly beside TARGET VEHICLE 3. Your affiant discovered that TARGET VEHICLE 5 is a 2022 silver Ford Eco Sport, VIN MAJ6S3KL9LC364682, registered to EAN Holdings, parent company to Enterprise Rent-A-Car.

27. On September 6, 2022, a representative of Windover Apartments advised your affiant that the tenants of unit 139 (the unit known by law enforcement to be utilized by the WILLIAMS' DTO) had not yet paid their September rent, and Knoxville Utilities Board (KUB) had sent a notification to the management office that apt. unit 139 had not paid their utility bill, and as a result were set to have the power cut off on September 8, 2022. This information is further evidence that the subjects had likely deserted the unit, and are now residing/ operating from 9112 Grayland Drive, Brendon Park Apartments, the TARGET LOCATION.

28. On September 8, 2022, Officers with the Knoxville Police Departments' OCU, and agents with ATF conducted a surveillance operation at the address of 9112 Grayland Drive. The purpose of the operation was to determine the actual apartment unit the DTO were using/staying in, as well as the any criminal activity that might originate from that particular apartment unit.

At approximately 1:18pm, Officers and agents on surveillance did observe a black male, earlier identified as Malik SCOTT-BOYNTON, exit apartment unit 102 within the breezeway of 9112 Grayland Drive (here after to referred to TARGET LOCATION). Officers and agents then observed SCOTT-BOYNTON enter TARGET VEHICLE 3 (vehicle still equipped with a GPS tracker), and leave the complex. Officers followed TARGET VEHICLE 3 as it traveled to the destination of 721 Walker Springs Road, Walker Springs Apartments, arriving at approximately 1:22pm. SCOTT-BOYNTON never exited TARGET VEHICLE 3, and was in the parking lot of the complex for less than two minutes, before returning directly back to the TARGET LOCATION at approximately 1:28pm. Your affiant knows that this particular activity is indicative of drug trafficking. In addition, your affiant knows through this investigation that this DTO commonly uses The Walker Springs Apartments parking lot as a location to distribute narcotics. About five minutes later, at approximately 1:35pm, surveillance units and agents observed Brian ROGERS exit apt. unit 102 of 9112 Grayland Drive (TARGET LOCATION), and enter

11

TARGET VEHICLE 5. Law enforcement units followed TARGET VEHICLE 5 as it traveled directly to the area of the Vue at Ridgeway Apartments, arriving at approximately 1:48pm, but made an abrupt turn away from the complex, as if to elude law enforcement detection. It is important to mention that law enforcement had prior knowledge that The Vue at Ridgeway Apartments were a common location for this particular DTO to meet their "customers". More specifically, this location is where ROGERS met with CS-1 to conduct the drug deal on July 6, 2022. Law enforcement briefly lost sight of ROGERS as he was operating TARGET VEHICLE 5, but did reconnect with the target as he was meeting with an unknown individual at The Willows Apartments, located at 7118 E. Arbor Trace Lane. Your affiant knows through this investigation that this particular DTO utilizes that apartment complex parking lot to conduct drug transactions. Surveillance units observed TARGET VEHICLE 5 to only be in the Willows Apartment parking lot for approximately two minutes before leaving. Officers then observed Brian ROGERS return to the TARGET LOCATION approximately 2:26pm.

At approximately 2:20pm, surveillance units and agents observed SCOTT-BOYNTON exit apt. unit 102, enter TARGET VEHICLE 3 and leave the TARGET LOCATION. At approximately 2:35pm, after following TARGET VEHICLE 3 to 6315 Kingston Pike (Kingston Pointe Apartments parking lot), law enforcement units observed SCOTT-BOYNTON conduct a hand-to-hand transaction with an unknown individual, operating a champagne colored Dodge pickup. The transaction was only a few seconds before both vehicles left the parking lot. Your affiant knows from training and experience that this activity is indicative of drug trafficking.

29. Your affiant made efforts to learn who the leasee/renter of the TARGET LOCATION is. An employee of the Brendon Park Apartment's management company (hereinafter "employee") disclosed to your affiant that the TARGET LOCATION is leased to a young female. The employee is a law enforcement officer with the Knox County Sheriff's Department who also works part-time for Brendon Park Apartments. The employee, in his part-time capacity, preemptively and of his own volition obtained the leasing information for the TARGET LOCATION. Your affiant learned the TARGET LOCATION was leased by a Megan Erin Davis and the lease included a copy of Ms. Davis' Illinois driver's license. Your affiant checked the National Crime Information Center (NCIC) records regarding Ms. Davis and learned the information on the driver's license has been altered. The name and date of birth on the license match NCIC records, however, the driver's license number and physical identifiers/descriptors have been altered to a degree to that your affiant believes the driver's license is fraudulent.

12

30. On September 14, 2022, Agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives and Officers with Knoxville Police Department executed a Federal Search Warrant. 3:22-MJ-1184, at 9112 Grayland Drive, Apartment 102. ROGERS was located inside the apartment and taken into custody. Officers found and seized a large sum of U.S. Currency, located in the top kitchen drawers of the kitchen island. Officers also found a small amount of marijuana, estimated to be no more than an ounce.

31. One of the subjects known to law enforcement to be staying at 9112 Grayland Drive, apartment 102, Malik Scott-Boynton, who officers observed leaving just prior to the execution of the search warrant. (Note: as referenced above, your affiant sought and obtained a State Search Warrant through Knox County Criminal Court placing a tracking of Scott-Boyton's car, TARGET VEHICLE 3). Malik had left the apartment in the burgundy Jeep Cherokee (TARGET VEHICLE 3). During the search warrant execution, Scott-Boynton had driven to the address of 790 North Cedar Bluff Road. Officers went to the TARGET LOCATION and observed Scott-Boyton's burgundy Jeep Cherokee parked in front of the target location. Officers began surveilling the area. Approximately one hour later, Scott-Boyton exited the TARGET LOCATION and locked the apartment door with a key. Scott-Boyton approached TARGET VEHICLE 3, he was taken into custody by law-enforcement. Scott-Boyton and Rogers, and two other unknown conspirators, have been observed and tracked with vehicle trackers, coming and going from the TARGET LOCATION multiple times per day over the course the last two months.

32. Officers performed a safety sweep of the TARGET LOCATION. No other persons were seen inside the TARGET LOCATION. Officers did observe in plain view and kilogram press, multiple large baggies consistent with narcotics packaging, and two blenders with narcotics residue. Officers did not observe any other furniture or items, aside from one blow-up mattress bed inside the apartment and a back-pack. After the safety-sweep, Officers left the apartment and kept it secure from entry in order to apply for this search warrant. You're affiant spoke with the apartment complex's management, who advised the apartment was leased to a John Rubin. Your affiant knows through this investigation that John Rubin is the same name that rented the apartment at Copper Point (reference paragraph 1) and also was the renter of another location associated with this DTO, Windover Apartments (reference paragraph 6, 12, 23, and 27 above).

33. Scott-Boyton was being transported to the Organized Crime Unit, KPD. During the transport, Scott-Boyton admitted to having narcotics hidden in his groin area. Your affiant seized approximately

two ounces of suspected heroin. The narcotics seized were pre-packed into approximate one-gram quantities, which is consistent with distributing and selling narcotics, pictured below:



Based on the observations by law enforcement surveillance, vehicle trackers, and narcotics seized, your affiant believes there is probable cause that the TARGET LOCATION is being used as a hub for heroin distribution throughout the greater Knoxville area.

## Conclusion

Given the aforesaid facts, I believe I have probable cause that the TARGET LOCATION located at 790 North Cedar Bluff Road, Apartment 2905, Knoxville, Tennessee, will contain evidence of violations 21 U.S.C. §841(a)(1) and 846 and/or 18 U.S.C. § 924(c). The evidence, fruits, and

14

instrumentalities to be searched for and seized are more fully described in Attachment B, which is attached hereto and incorporated fully herein.

FURTHER, THE AFFIANT SAYETH NOT.

Todd Strickenberger
Task Force Officer
ATF

Subscribed and sworn to before me this 14th day of September, 2022.

Debra C. Poplin
United States Magistrate Judge

**Premises to be Searched**

**790 North Cedar Bluff Rd, Apartment 2905, Knoxville, Tennessee, 37923**

Driving directions to Metropolitan Apartments, 790 North Cedar Bluff Road, Apartment 2905 from the Bureau of Alcohol, Tobacco, Firearms and Explosives, Knoxville Field Office, 710 Locust Street, Knoxville, TN 37902: Begin traveling southeast on Locust Street, to the intersection at Cumberland Avenue. Turn right onto Cumberland Avenue and proceed to the intersection at Henley Street. Turn right onto Henley Street, heading north, towards the Western Avenue intersection. Merge onto Interstate 40 West; exit at Exit 378B, and turn north on North Cedar Bluff Road. Arrive at the location approximately one quarter mile north on the East side of North Cedar Bluff Road. .



16



## ATTACHMENT B

### Items to be seized

- Printed or digital property that includes records, receipts, notes, ledgers, and other papers and packages relating to drug trafficking to, from, and within the Eastern District of Tennessee, including but not limited to receipts, papers, tickets, notes, schedules, and other items relating to transactions, address books, telephone books, and papers reflecting names, addresses, and telephone numbers of associates including drug associates, customers, and/or suppliers;
- Bank statements and records, wire transfer documents including wire transfer receipts, receipts of money orders and cashier's checks, deposit bank records, keys to safe deposit boxes, and keys, access codes, and records relating to storage facilities, all of which evidence the obtaining, transferring and concealment of assets associated with or obtained through drug trafficking;
- United States currency and financial instruments, including but not limited to stocks, and bonds, and vehicle title documents, all of which constitute the proceeds of drug trafficking and which constitute the operating capital for continued drug trafficking;
- Photographs of drug customers and suppliers and other coconspirators in the drug trafficking trade and photographs of assets or of controlled substances;
- Controlled substances and paraphernalia for packaging, cutting, weighing, and distributing controlled substances, including, but not limited to, scales and baggies, tourniquets, and syringes;
- Firearms, ammunition, and firearm accessories possessed with controlled substances; and
- Electronic devices, including, without limitation, cellular telephones, tablets, laptop computers, desktop computers, and external storage devices;

All of which constitute evidence of the commission of a criminal offense, contraband, the fruits of a crime, and property designed or intended for use or which is or has been used as the means of committing the above-described criminal offenses.

18

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,     )
                               )     CASE NO.: 3:22-MJ-**1188**
v.                             )
                               )     **FILED UNDER SEAL**
BRIAN D. ROGERS and            )
MALIK M. SCOTT-BOYNTON

## MOTION TO SEAL

The United States of America, by and through the Acting United States Attorney for the

Eastern District of Tennessee, moves to seal all documents related to the above-captioned case.

The United States submits that this matter is part of an ongoing investigation. The premature

disclosure of the contents of these documents may have a significant and negative impact on the

continuing investigation and may severely jeopardize its effectiveness. Furthermore, these

documents include allegations of a sensitive nature and their premature disclosure could

potentially have serious negative consequences for the individuals identified in the documents.

Accordingly, the United States moves the court to seal the Complaint, Affidavit attached

to the Complaint and Arrest Warrant the above-captioned case number until the time of arrest or

further Order of the Court.

Respectfully submitted this 14th day of September, 2022.

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

By:     _A. S. Kirk_

ALAN S. KIRK
Assistant United States Attorney
800 Market Street, Suite 211
Knoxville, Tennessee 37902
(865) 545-4167
Alan.kirk@usdoj.gov
AL Bar#:5539N45K

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,      )
                               )      CASE NO.: 3:22-MJ- 1188
v.                             )
                               )      **FILED UNDER SEAL**
BRIAN D. ROGERS and            )
MALIK M. SCOTT-BOYNTON         )

## SEALING ORDER

Upon motion of the United States of America and for good cause shown,

IT IS ORDERED that the Complaint, Affidavit attached to the Complaint and Arrest

Warrant, the Motion to Seal, and the Sealing Order filed in the above-styled case shall be sealed

and maintained in the custody of the Clerk of the Court until the arrest and pending further order

of this Court.

Enter this 14th day of September, 2022.

DEBRA C. POPLIN
United States Magistrate Judge